**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MELODY KURTENBACH,**

      Plaintiff,

vs.                                        **Case No: 8:12-CV-20-T-23EAJ**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Section 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for disability insurance benefits under the Act.[1]

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends reversal of the Commissioner's decision and remand for further administrative proceedings.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Bloodsworth

---

[1] The district court referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citation omitted).

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

### I. Background

On November 5, 2007, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of August 19, 2006. (T 17) Plaintiff's application was denied initially and upon reconsideration. (Id.) A hearing was held on March 15, 2010. (Id.) Thirty-six years old at the time of the hearing, Plaintiff has at least a high school education and past work experience as a cashier, clerk, sales representative, and assembler. (T 31, 58)

On September 2, 2010, the ALJ partially approved Plaintiff's application, finding that Plaintiff was disabled from August 19, 2006 through January 31, 2008. (T 18, 25, 33) The ALJ determined that Plaintiff's severe impairments included the residual effects of multiple injuries sustained in a motor vehicle accident but that these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 22-23) Nonetheless, the ALJ found that Plaintiff lacked the residual functional capacity ("RFC") to sustain work at any exertional level during the period of disability. (T 23) Thus, the ALJ concluded Plaintiff was unable to perform

her past relevant work from August 19, 2006 through January 31, 2008 and that no other jobs existed in significant numbers in the national economy that Plaintiff could have performed during this time period. (T 23-25)

However, the ALJ also determined that Plaintiff's medical condition improved by February 1, 2008 such that she could engage in substantial gainful activity. (T 26) As of February 1, 2008, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (Id.) Further, Plaintiff had an RFC to perform a reduced range of sedentary work with the following limitations: no moving machinery, use of a cane for ambulation over uneven terrain and for long distances, and alternation between sitting and standing positions every sixty (60) minutes. (T 27)

While finding Plaintiff unable to perform past relevant work, the ALJ concluded that Plaintiff could perform other jobs available in significant numbers in the national economy such as telephone solicitor, credit authorizer, telephone quotation clerk, call-out operator, and identification clerk. (T 32, 60-61) Consequently, the ALJ concluded that Plaintiff was not disabled as of February 1, 2008 and denied Plaintiff's claim for disability benefits beyond that date. (T 32) On November 10, 2011, the Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (T 1-3)

The medical evidence and other evidence of record has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

In challenging the ALJ's finding that her condition improved as of February 1, 2008, Plaintiff claims the ALJ erred by: (1) failing to properly consider the opinions of her treating

physicians, namely Richard E. Bransdorf, M.D. ("Dr. Bransdorf"); and (2) finding that Plaintiff's subjective complaints of pain were not credible and unsupported by substantial evidence.

**A.**     Plaintiff's complaints stem from an August 2006 accident in which she sustained multiple injuries as a front-seat passenger in a car that was struck head-on at high speed.[2] (T 23) As summarized in the ALJ's report, Plaintiff's injuries included an L3 Chance fracture, L4 lateral mass fractures with compression fracture of L3, left mid-femur fracture, and left rib fracture. (Id.) She required back and leg surgeries in which rods were placed in her spine and femur. (Id.) As a result, Plaintiff suffers from back, hip, leg, and knee problems that are well documented in the treatment record.

Here, Plaintiff asserts that the ALJ erroneously concluded that the effects of her injuries abated by February 1, 2008, and that the ALJ reached this erroneous finding, in part, because she failed to properly credit the opinions of Plaintiff's treating physicians. (Dkt. 11 at 10-13)

The ALJ generally must give a treating physician's opinion "substantial or considerable weight" unless there is good cause to disregard the opinion. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. Id. at 1179.

However, if a treating source's opinion on the nature and severity of a plaintiff's impairment is well-supported by medically acceptable techniques and is not inconsistent with the other substantial evidence in a plaintiff's record, it is given controlling weight. Shaw v. Astrue, 392 F.

---

[2] The ALJ erroneously stated the year of the car accident as 2007. (T 23)

App'x 684, 687 (11th Cir. 2010) (per curiam) (unpublished). When a treating physician's opinion is not entitled to controlling weight, the court must still evaluate the opinion using several factors: length of treatment, frequency of treatment, the overall nature and extent of treatment, support from medical signs and laboratory reports, consistency with the record as a whole, and specialization of the doctor. See 20 C.F.R. § 404.1527(c).

In February 2008, Plaintiff's neurosurgeon, Jason Conaughty, M.D. ("Dr. Conaughty") ordered lumbar spine X-rays, which showed no indication of further spinal issues. (T 777-78) Also in February 2008, Plaintiff was evaluated at the office of her orthopedist, Jason Homan, D.O. ("Dr. Homan"). (T 601-02) According to the report from physician's assistant Christian Elliott, Plaintiff showed good progress since the time of her injuries, although she had trouble regaining strength in her quadriceps. (T 29, 601) A physical examination of her right hip revealed no pain with palpation of the lateral, anterior, or posterior aspects. (T 601) Plaintiff exhibited a range of motion from 0 to 90 degrees, and radiographs of the hip showed adequate joint space and excellent healing of the fracture. (Id.)

Additionally, in March 2008, radiologist Vikram Patel, M.D. ("Dr. Patel") reported that an MRI of Plaintiff's left hip and pelvis area showed no acute abnormalities and that the hip joints appeared normal with no evidence of contusion or fracture. (T 29, 607) In a limited MRI of Plaintiff's left knee, Dr. Patel further noted that there was no evidence of inflammation, joint effusion, or tear. (T 26, 29, 609)

In May 2009, neurologist Anthony Shydohub, M.D. ("Dr. Shydohub") documented Plaintiff's complaints of pain but ruled out muscular atrophy, nerve injury, or any other neurological damage. (T 29, 896-898) He opined that she may have post-laminectomy syndrome and paresthesia,

which can occur as a result of severe injuries. (T 898) He prescribed medication to treat her pain and concluded that no further neurological testing was warranted. (Id.)

Thereafter in August 2009, Dr. Bransdorf completed a multiple impairment questionnaire in which he noted that Plaintiff's reported pain level was never lower than six (6) on a scale of ten (10), and that he has been unable to completely relieve the pain with medication. (T 923-30) Dr. Bransdorf further stated that Plaintiff could not sit for more than one hour during an eight-hour workday and that she could not stand or walk for more than one hour out of the day. (T 925) He noted that she suffered fatigue as a side effect of her medications, and that Plaintiff was incapable of tolerating even a low amount of work-related stress. (T 927-28) In February 2010, Dr. Bransdorf diagnosed Plaintiff with chronic pain. (T 29, 932) In May 2010, Dr. Bransdorf stated that Plaintiff is incapacitated by the effects of her injuries and her medications.[3] (T 30, 937) He opined that her condition qualifies as a permanent disability. (T 31, 937)

In her findings, the ALJ discussed the opinions of Plaintiff's treating physicians in detail. (T 28-30) In regard to Dr. Bransdorf's conclusions, the ALJ explained that she was discounting his August 4, 2009 multiple impairment questionnaire and his May 2010 statement because these assertions were not supported by objective medical evidence or detailed explanations. (T 24) She further noted that Dr. Bransdorf provided no basis for his conclusions about Plaintiff's exertional and manipulative limitations in his multiple impairment questionnaire. (T 24) In response, Plaintiff asserts that Dr. Bransdorf gave detailed explanations and that the ALJ erred in discounting the observations.

---

[3] Dr. Bransdorf's May 2010 statement is in the form of a letter written to Plaintiff's attorney. (T 937)

6

But Plaintiff's arguments on this point are not persuasive. The ALJ must state with particularity the weight given to different medical opinions and the reasons for assigning that weight. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). In doing so, the ALJ must "clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Here, the ALJ stated that she was discounting Dr. Bransdorf's multiple impairment questionnaire of August 2009 because it was not sufficiently annotated to support his findings of Plaintiff's limitations. (T 24, 31) Furthermore, the ALJ correctly noted that it is not within Dr. Bransdorf's purview to determine that Plaintiff is permanently disabled, as he opined in May 2010. The issue of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1).

Ultimately, the ALJ is free to reject the opinion of any physician when it is not supported by the record. 20 C.F.R § 404.1526. The ALJ considered the opinions of Plaintiff's treating physicians and specifically explained why she did not credit Dr. Bransdorf's findings from August 2009 and May 2010. (T 30) This issue does not entitle Plaintiff to relief.

**B.** In the Eleventh Circuit, subjective complaints are evaluated according to a three-part "pain standard" that is used when a claimant attempts to establish disability through testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)(per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam). If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ

must "articulate explicitly and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

Previously in this Circuit, if an ALJ failed to articulate a reason for discrediting a Plaintiff's subjective pain testimony, then the Commissioner, as a matter of law, was deemed to have accepted that testimony as true.[4] MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). However, that approach has been rejected and remand to the agency is recognized as the proper course for an inadequate credibility determination. See, e.g., Howell v. Astrue, No. 8:10-cv-2175-T-26TGW, 2011 WL 4002557, at *4-5 (M.D. Fla. Aug. 16, 2011).

At the hearing, Plaintiff stated that she has problems with stability while walking and requires a cane. (T 29, 52) She reported that she suffers from constant severe pain in her lower back, which radiates to her left leg, and she must lie down frequently. (T 27, 47-48) Plaintiff estimated that she sleeps a total of six hours during the day. (T 28, 54) Plaintiff testified that she needs assistance with showering, cooking, and cleaning. (Id.) She is able to shop for groceries using a motorized cart but needs assistance. (T 28, 55) She cannot lift more than fifteen pounds. Due to the pain, she can sit for no more than twenty minutes at a time. (T 51) She can walk less than a mile. (T 52)

The ALJ found that Plaintiff's impairments could reasonably be expected to produce her

---

[4] The MacGregor court also held that failure to adequately evaluate opinions of treating physicians mandated that the physicians' opinions were accepted as true. MacGregor, 786 F.2d at 1053 ("Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true."). The Eleventh Circuit has expressly retreated from this aspect of MacGregor in recent decisions. See, e.g., Dempsey v. Comm'r of Soc. Sec., 454 F. App'x 729, 732 n.5 (11th Cir. 2011) (per curiam) (unpublished).

alleged symptoms, but that the Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms are not credible as of February 1, 2008 insofar as they are inconsistent with the RFC for a limited range of sedentary work. (T 28) In explaining her finding, the ALJ emphasized that several MRIs and a lumbar X-ray taken after February 1, 2008 failed to show overt issues with Plaintiff's spine, knees, hips or pelvis. (T 28) The ALJ also noted that Dr. Shydohub found no neurological problems during his May 2009 exam, and that other physicians failed to detect acute abnormalities from Plaintiff's car-related injuries in examinations after February 1, 2008. She explained that Plaintiff lives on her own, goes shopping, and does laundry. (T 30) The ALJ concluded that objective medical evidence does not support Plaintiff's contention that she could not work after February 1, 2008. (Id.)

However, the ALJ also acknowledged that Plaintiff has complained of pain to her physicians since February 2008 and sought care for pain-related discomfort. In a February 2008 visit to Dr. Bransdorf, Plaintiff described back pain, stomach pain, numbness in her left leg and left foot, and pain in her left side. (T 28) Plaintiff was also treated by Dr. Conaughty (for her back) and Dr. Homan (for her leg) during the relevant time period. (Id.) In March 2008, Dr. Homan restricted Plaintiff to lifting no more than ten pounds due to severe back and hip problems. (T 774) Dr. Homan also sent Plaintiff to Dr. Shydohub for further evaluation, and while Dr. Shydohub did not find any neurological abnormalities, his treatment notes state that patients with traumatic injuries can suffer from burning-type paresthesia and other forms of pain as a result of their severe injuries. (T 898) He prescribed the pain medication Lyrica at doses of 75 milligrams taken twice a day and advised Plaintiff to double the dosage if necessary. (Id.) In December 2009, Plaintiff returned to Dr. Homan's office for persistent pain in her lower back, left hip, and left knee. (T 912-13) None

of this evidence is inconsistent with Plaintiff's statements about her pain levels.

Moreover, Plaintiff's testimony about her daily activities revealed that she relies on others to complete most basic tasks. Although she lives alone, Plaintiff stated that friends and family do her cooking and cleaning. (T 54-55) She does not own a car, and she has driven only two or three times since August 2006. (T 55) Plaintiff does small loads of laundry and shops with a motorized cart, but she requires assistance to load and unload her groceries. (T 54-55) In any case, participation in common daily tasks, such as housework, does not preclude a finding of disability. See Lewis, 125 F.3d at 1441. Also, the record is unclear on the extent to which Plaintiff's medications relieve her pain and cause side effects. The ALJ emphasized that Plaintiff testified that she did not suffer from side effects, and that her medicines help her sleep and get through the day. (T 30, 49) However, Plaintiff also testified that she remains in severe pain in her back and left leg and that the pain is aggravated by simple tasks such as taking out the trash. (T 47-48) Additionally, Plaintiff stated that fatigue from her medications is worrisome enough that she does not cook due to fear that she will leave something on the stove while she dozes off. (T 54, 59) Finally, as discussed previously, while the ALJ did not credit two of Dr. Bransdorf's statements, she did not specifically discount his February 2010 conclusion that Plaintiff suffers from chronic pain.[5] (T 29, 932)

In light of this evidence, further development is required for additional fact-finding and clarification of the evidence relied upon by the ALJ in evaluating Plaintiff's credibility. The ALJ emphasized the lack of acute abnormalities in Plaintiff's MRIs and other tests after February 1, 2008

---

[5] The ALJ did note that this February 2010 diagnosis was not accompanied by a musculoskeletal examination. (T 29)

and Plaintiff's daily activities. However, the pain test utilized by this circuit does not necessarily require as much when there is a history of a prior traumatic injury. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standards is itself sufficient to support a finding of disability. Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." Foote, 67 F.3d at 1561 (citations omitted). Thus, where the ALJ's findings on critical issues are insufficient to permit meaningful review, a remand is warranted for additional fact finding. See Maffia v. Comm'r of Soc. Security, 291 F. App'x 261, 264-65 (11th Cir. 2008) (per curiam) (unpublished). Accordingly, it is recommended that this case be remanded for reconsideration of Plaintiff's credibility as to her ongoing pain in light of the applicable legal standards.

## **CONCLUSION**

As discussed above, the Commissioner's decision should be remanded for additional fact finding to fully assess Plaintiff's credibility on her subjective symptoms. In reaching that recommendation, this Court expresses no views as to what the outcome of the proceedings should be. On remand, each side shall be afforded an opportunity to introduce additional evidence on the issue presented. The purposes of the Social Security Act will best be served by further consideration of Plaintiff's claims upon a more fully developed record. See generally Epps v. Harris, 624 F.2d 1267, 1275 (5th Cir. 1980).

Accordingly and upon consideration, it is **RECOMMENDED** that:

1) the decision of the Commissioner be **REVERSED** and this case **REMANDED** for further administrative proceedings consistent with the foregoing; and

(2)   the Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file. Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993). The final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorneys' fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006).

**Date: December 12, 2012**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge